LEWIS, J.
 

 Ivan Waylen Easterly, Appellant, seeks review of his conviction of engaging in sexual activity with a minor between the ages of twelve and eighteen while in a position of familial or custodial authority. He raises three issues: (1) whether the trial court abused its discretion in declining to dismiss the State’s second amended information due to its refusal to narrow the timeframe of the charged offenses; (2) whether the trial court abused its discretion in admitting similar fact evidence; and (3) whether fundamental error occurred when the prosecutor argued, in the State’s rebuttal closing argument, that the evidence had “torn away” the presumption of innocence. Finding no error, we affirm and write to explain our decision.
 

 FACTS
 

 The State filed an amended information charging Appellant with two crimes: engaging in sexual activity with a child twelve years of age or older but less than eighteen, while standing in a position of familial or custodial authority, in violation of section 794.011(8)(b), Florida Statutes (2004) (count one); and unlawful activity by a person twenty-four years of age or older with a person sixteen or seventeen years of age, in violation of section 794.05, Florida Statutes (2004) (count two). The time period alleged for the commission of both crimes was “on or about or between April 1, 2004, and June 30, 2004.” The alleged victim was K.D., who was Appellant’s stepdaughter and the mother of his
 
 *809
 
 biological child, according to the State’s uncontested evidence.
 

 Upon Appellant’s motion, the trial court ordered the State to file a statement of particulars with as much detail as possible about the date, time, and location of the offenses. After the State failed to timely comply with the order, Appellant filed a motion to compel the State’s compliance. In response, the State filed a second amended information, which contained essentially the same language as the amended information, except that it added an allegation that the offense listed in each count occurred “one or more times.” Appellant, in turn, filed a motion to dismiss, arguing that the alleged offenses were not “continuing offenses” and that the changes in the second amended information had compounded the problem by making issues of time, date, and place more uncertain.
 

 At a hearing on the motion, defense counsel argued that the State was required to narrow the timeframe because it knew of at least two separate dates when K.D. alleged Appellant sexually abused her. The prosecutor explained that Appellant had sexually abused K.D. on a regular basis, but that K.D. could recall only one or two specific incidents. The prosecutor further explained that K.D. had a clear memory of one incident in particular’ and that the State intended to elicit the details of that event at trial. Finally, the prosecutor argued that the State’s difficulty in narrowing the timeframe resulted from the fact that, although it had conclusive evidence that K.D. had conceived a child by Appellant, there was no evidence that either of the specific incidents K.D. recalled was the one that led to the conception.
 

 Defense counsel argued that the issue was not when K.D. became pregnant, but when she was sexually abused. Defense counsel pointed out that, in deposition, K.D. had specifically described an incident that occurred on May 1, 2004, and one that occurred on May 2, 2004. The court asked defense counsel if he was willing to stipulate to one of those incidents as the one that resulted in the pregnancy, and defense counsel responded that he was not required to do so. The trial court denied the motion to dismiss, opining that the State had narrowed the timeframe as much as possible.
 

 The State had previously filed a
 
 Williams
 

 [1]
 

 rule notice, indicating that it intended to introduce evidence of five offenses that Appellant perpetrated against K.D. outside the timeframe alleged in the information. Two of these offenses occurred between February 1, 2001, and March 24, 2001; one occurred between March 25, 2001, and December 31, 2001; and two occurred between January 20, 2005, and March 19, 2005. The offenses varied in detail, from the fondling of KD.’s breasts and vaginal area, to penile-vaginal penetration or union, to the penetration of or union with KD.’s vagina by Appellant’s tongue. One of the offenses included the use of force. The State alleged that three of these offenses occurred in the family home in the vicinity of Chiefland, Florida, and two occurred in the family home in the vicinity of Trenton, Florida.
 

 Appellant filed a motion in limine, arguing that the proposed
 
 Williams
 
 rule evidence was improper because his identity was not at issue and the acts were not similar enough to one another. He also argued that, due to the number of incidents and the length of time they spanned, the proposed
 
 Williams
 
 rule evidence would become a feature of the trial.
 

 After hearing oral arguments from both parties, the trial judge observed that,
 
 *810
 
 based on arguments he had previously heard, it appeared that Appellant intended to argue that he was asleep when he impregnated K.D. and did not know what he was doing. The judge opined that if Appellant raised such a defense, the number of instances would “become relevant as to whether that was a reliable defense.” The trial court also agreed with the State that the evidence was admissible to show absence of mistake, and accordingly, denied the motion in limine.
 

 Prior to trial, Appellant requested a special jury instruction, which included his knowledge that he was committing the charged act as an element of the crime. The trial court denied the request, determining instead to use the standard instruction. The case proceeded to trial.
 

 In the defense’s opening statement, counsel conceded that K.D. was sixteen years old in April, May, and June of 2004 and that a DNA test established that her child’s DNA matched Appellant’s DNA. Defense counsel stated that Appellant had “no clue” how K.D. became pregnant with his child and that he could only speculate. Defense counsel alleged that “there was one event,” that Appellant could not describe it, and that Appellant “was not the one [who] initiated it.”
 

 K.D. gave the following testimony. One night between April 1, 2004, and June 30, 2004, she was alone with Appellant in the family home in Trenton. The home was not air-conditioned, so K.D. went to lie down in the coolest room in the house, the one Appellant and her mother shared. K.D. later awoke to find Appellant under the covers with her, fondling her breasts and, later, her vagina. She tried to push Appellant off of her and to knee him, but he did not stop. Later in the encounter, Appellant “started performing penis-vaginal” intercourse. K.D. again tried to push Appellant off and to knee him, and Appellant held her by the shoulders, pushing her “more down onto the bed.” During this encounter, Appellant’s eyes were closed but would “open once in a while, basically quiver[ing] open and then close, like he was trying to pretend that he was asleep.” Appellant had sexual intercourse with K.D. more than once between April 1, 2004, and June 30, 2004, but she could specifically recall only one incident that occurred during that timeframe.
 

 K.D. testified that she learned she was pregnant in June of 2004 and that her child was born on January 19, 2005. The State later presented evidence that, based on a DNA test, there was a greater than 99.99 percent probability that Appellant was the biological father of this child. Based on this evidence, an expert in forensic DNA and population genetics opined that Appellant was the father.
 

 After the trial court gave a limiting instruction regarding the
 
 Williams
 
 rule evidence, K.D. testified as follows regarding three events that occurred in the family home in Chiefland. K.D.’s first sexual encounter with Appellant occurred when she was “about 12 going on 13.” At that time, K.D. and her sister were sharing a bedroom, and Appellant came in to say “good night.” K.D. was lying on a mattress on the floor, and her younger sister was lying in a twin bed. After saying “good night,” Appellant lay on the floor next to K.D. and acted as if he had fallen asleep. As K.D. was beginning to fall asleep, she felt Appellant’s arm around her. Appellant had placed his hand under her shirt and was beginning to fondle her. K.D.’s sister was “sound asleep” at the time. There was no talking between K.D. and Appellant. Appellant later began to fondle her vaginal area. A week or two later, Appellant repeated the “same general routine,” but this time, he engaged in penile-vaginal intercourse with her. Another incident oc
 
 *811
 
 curred where Appellant woke K.D. up and “started performing oral sex on [her].” This incident also occurred while she was sleeping in the room with her sister.
 

 K.D. testified that Appellant continued to sexually abuse her after she gave birth. Specifically, she recalled an incident that occurred when her family was moving residences. Because the family had already packed most of its belongings, there was only one bed in the house, the one that Appellant and KD.’s mother had shared. K.D. went to sleep on that bed and was awakened by Appellant, who was having vaginal intercourse with her.
 

 KD.’s sister testified that she had never seen Appellant “wandering around at night” and had never awakened to find him near her bed.
 

 In his own defense, Appellant testified that K.D. would sometimes sleep on a camping mat, but that he had never gone into her bedroom and lain down next to her on the mat. He denied ever touching K.D. “in her sexual, private areas” or fondling her breasts or vaginal area while the family was living in Chiefland. He also denied having had “any sort of sexual intercourse” with K.D. in that home. Appellant testified that, to his knowledge, he had also never sexually molested K.D. in the home in Trenton or at any time after the birth of her child.
 

 Appellant further testified that he would often awake to find K.D. in the bed with him instead of his wife. He stated that he would argue with his wife about this occurrence and that it would then “stop for a short period of time.” He claimed that his wife had informed him that she would sometimes have sex with him while he was asleep. He recalled that such occurrences “gained in frequency as [they] were married a longer time” and continued throughout the marriage. Appellant testified that when he heard of the accusations against him, he requested a DNA test because “[w]hat was being said wasn’t rationale [sic],” as he “had no knowledge of anything like that ever happening.” Appellant’s parents corroborated his claim that he had a tendency to engage in sexual intercourse while he was sleeping. They testified that Appellant’s wife had bragged to them about such occurrences.
 

 At the charge conference, defense counsel again raised the issue of inserting “knowingly” into the jury instructions. The State acquiesced in the request, and the trial court approved it. The case proceeded to closing arguments.
 

 The State began its closing argument by echoing comments from its opening statement that K.D. had lost her childhood “at the hands of this man.” The prosecutor then discussed the May 2004 incident in detail. The prosecutor argued that the May 2004 incident “was not the first time this had ever happened, nor was it the last time.” Arguing that Appellant began taking a “markedly different approach” toward K.D. once she reached puberty, the prosecutor recalled some of K.D.’s testimony regarding inappropriate kissing, hugging, and compliments from Appellant. After stating that Appellant’s inappropriate behavior began before K.D. was sixteen years old, the prosecutor advised the jury that it could consider the previous events only for “very specific reasons,” according to the court’s instructions. The prosecutor discussed testimony from Appellant’s wife that he had not had any sleeping disorders and testimony from K.D.’s sister that Appellant had never approached her during the night. The prosecutor then pointed out that Appellant had “unerringly” found K.D. in the night, indicating that he was conscious of his actions. The State did not discuss the details of the pre-2004 incidents again except to state that Appellant began to abuse K.D. when
 
 *812
 
 she reached puberty. In the State’s rebuttal closing argument, the prosecutor made the following claim:
 

 The testimonial evidence in this case, the physical evidence in this case, has not only removed the presumption of innocence from this man, it has torn it away and shown him for what he did to [K.D.] on [sic] May of 2004 when he raped her.
 

 There was no objection to this comment. Later, the trial court instructed the jury that it must presume Appellant’s innocence. The court further explained, “The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.”
 

 Ultimately, the jury found Appellant guilty as charged of both counts alleged in the information. The trial court adjudicated Appellant guilty only as to the charge of engaging in sexual activity with a minor between the ages of twelve and eighteen while in a position of familial or custodial authority, and Appellant was sentenced to thirty years in prison.
 

 ANALYSIS
 

 I. Timeframe Alleged in Information
 

 First, we consider Appellant’s argument that the trial court erred in declining to dismiss the second amended information after the State refused to provide a statement of particulars as ordered. Generally, a trial court’s ruling on a motion to dismiss based on the State’s failure to comply with an order requiring a statement of particulars is reviewed under the abuse of discretion standard.
 
 State v. Del Gaudio,
 
 445 So.2d 605, 608 (Fla. 3d DCA 1984) (limitation of holding on other grounds recognized in
 
 McKinney v. Yawn,
 
 625 So.2d 885, 888 n. 1 (Fla. 1st DCA 1993)).
 

 Florida Rule of Criminal Procedure 3.140(n) entitles a criminal defendant to a statement of particulars “when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense.” Rule 3.140(n) provides that “[t]he statement of particulars shall specify as definitely as possible the place, date, and all other material facts of the crime charged that are specifically requested and are known to the prosecuting attorney.”
 

 The Florida Supreme Court’s opinion in
 
 Dell’Orfano v. State,
 
 616 So.2d 33 (Fla.1993), provides strong guidance for when a trial court must require the State to narrow a timeframe alleged in an information charging crimes of child sexual abuse. In
 
 Dell’Orfano,
 
 the court considered whether a trial court erred in dismissing an information charging sexual abuse of a child because the State had failed to provide a statement of particulars narrowing the timeframe of the alleged crimes to less than twenty-seven months.
 
 See id.
 
 at 34. In considering the propriety of the dismissal, the supreme court observed that the issue implicated “two conflicting public policy concerns”: (1) the State’s interest in vigorously enforcing laws against child abuse; and (2) defendants’ interests in being sufficiently apprised of the charges against them “such that they can prepare an adequate defense.”
 
 Id.
 
 at 34. The supreme court declined to adopt a bright-line rule governing when a timeframe is too lengthy.
 
 Id.
 
 It observed, however, that “a multi-year period clearly would be excessive where the State is able to narrow the time-frame further but simply refuses to do so.”
 
 Id.
 
 Similarly, the court noted, “Obviously, if the State knows the
 
 *813
 
 specific date on which an offense occurred, the State must provide that information when ordered to give a statement of particulars.”
 
 Id.
 
 at 35 n. 1.
 

 The
 
 Dell’Orfano
 
 court held that “a trial court on a proper motion is required to dismiss an information or indictment involving lengthy periods of time if the State in a hearing cannot show clearly and convincingly that it has exhausted all reasonable means of narrowing the time frames further.”
 
 Id.
 
 The court noted that a defendant would be entitled to a hearing if he or she made allegations that, if true, “would support the existence of prejudice in preparing a defense attributable to the length of time stated in the charging instrument.”
 
 Id.
 
 at 35 n. 2. Under the
 
 Dell’Orfano
 
 holding, once the defendant shows entitlement to a hearing, and the State shows that it cannot narrow the timeframe, the burden shifts to the defendant to show that the defense more likely than not will be prejudiced by the length of the timeframe.
 
 Id.
 
 at 35. The
 
 Dell’Or-fano
 
 court declined to hold that the twenty-seven month period at issue was too lengthy as a matter of law.
 
 See generally id.
 
 Instead, it remanded the case to the trial court for a hearing.
 
 Id.
 
 at 36.
 

 In its arguments below, the State made it clear that the crime with which it was attempting to charge Appellant was the one that led to KD.’s pregnancy. Although the State knew the specific date of one incident of sexual abuse, it could not be certain that this incident was the one that caused the pregnancy. At the same time, the State could not be certain that this incident did not cause the pregnancy. For this reason, it would have been improper for the State to charge Appellant with two separate crimes based on both the pregnancy and the May 1, 2004, incident.
 
 [2]
 
 To be sure the timeframe alleged in the information captured the act that led to the pregnancy, the State needed to expand it beyond May 1, 2004.
 
 [3]
 

 We are aware that the State could have chosen to proceed specifically on the May 1, 2004, incident without attempting to prove that Appellant fathered the victim’s child. However, the State’s decision to charge Appellant for the offense that led to the pregnancy, even though it could not pinpoint a date of the offense, was a matter of prosecutorial discretion. In
 
 Dell’Or-fano,
 
 the supreme court noted, “[Cjommon sense dictates that admitted wrongdoing should not be shielded from prosecution merely because the State is unable to provide greater specificity in an information or indictment.”
 
 Dell’Orfano v. State,
 
 616 So.2d 33, 35 (Fla.1993). Similarly, when evidence as conclusive as a defendant’s fathering his stepdaughter’s child exists, the defendant should not be shielded from prosecution for the offense leading to that pregnancy simply because the State cannot isolate the date of the offense leading to the pregnancy. Under the circumstances of this case, the State satisfied the
 
 Dell’Or-fano
 
 requirement that it exhaust all reasonable means of narrowing the time-frame.
 

 
 *814
 
 Moreover, even if the State had not satisfied that requirement, Appellant did not show prejudice in the State’s failure to narrow the timeframe further, which he was required to do under the supreme court’s opinion in
 
 Dell’Orfano.
 
 Although the State did not provide the date of the May 1, 2004, incident in a statement of particulars, Appellant was aware that the State would question K.D. regarding this incident. Appellant was prepared to cross-examine her about the date of that offense, but he chose not to do so. Furthermore, at the pre-trial hearing, Appellant did not argue that he had an alibi defense or any other defense that would have made the narrowing of the three-month timeframe advantageous to him. In view of these facts, the three-month time-frame, which is far shorter than the time-frames in the cases Appellant cites, was not excessive, and the trial court did not abuse its discretion in refusing to dismiss the case.
 

 II. Similar fact evidence
 

 Next, we consider Appellant’s argument that the trial court erred in admitting evidence of the other acts of sexual abuse he perpetrated against the victim. A trial court’s decision to admit similar fact evidence, or
 
 Williams
 
 rule evidence, is reviewed for abuse of discretion.
 
 See Moore v. State,
 
 943 So.2d 296, 297 (Fla. 1st DCA 2006) (finding no abuse of discretion in the admission of evidence of similar acts of child molestation);
 
 Hodges v. State,
 
 885 So.2d 338, 357 (Fla.2004) (stating, generally, that the admission of collateral crime evidence is within a trial court’s discretion).
 

 Under the
 
 Williams
 
 rule, evidence of a criminal defendant’s other crimes or bad acts is generally admissible if it is relevant to a material fact in issue, unless it is relevant only to demonstrate the defendant’s bad character or propensity to engage in criminal conduct.
 
 Hodges,
 
 885 So.2d at 357 (citing
 
 Williams v. State,
 
 110 So.2d 654, 663 (Fla.1959)). Generally, such evidence is admitted to show “motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality.”
 
 Schwab v. State,
 
 636 So.2d 3, 7 (Fla.1994) (quoting
 
 Williams,
 
 110 So.2d at 662)). The
 
 Williams
 
 rule has been codified at section 90.404(2)(a), Florida Statutes (2007), which provides as follows:
 

 Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
 

 Courts applying the
 
 Williams
 
 rule have observed that “the relevance of collateral crime evidence is often a function of similarity.”
 
 McLean v. State,
 
 934 So.2d 1248, 1255 (Fla.2006) (citations omitted). As a general rule, similarity is of particular importance when the similar fact (or collateral crime) evidence is being admitted to show identity, absence of mistake, or common plan or scheme.
 
 Id.
 

 The Legislature has adopted a relaxed standard of admissibility for similar fact evidence in child molestation cases.
 
 See
 
 § 90.404(2)(b), Florida Statutes (2007);
 
 McLean,
 
 934 So.2d at 1258-59. Section 90.404(2)(b) states, “In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant’s commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.” The Florida Supreme Court has explained that this provision “broadly provides that evidence of the defendant’s
 
 *815
 
 commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses ... share any similarity.”
 
 McLean,
 
 934 So.2d at 1259.
 

 Even under the relaxed standard of admissibility codified at section 90.404(2)(b), however, evidence of other acts of child molestation is subject to relevancy requirements and the section 90.403 balancing test.
 
 McLean,
 
 934 So.2d at 1259. For this reason, the similarity of the charged offense to the collateral offenses is still important to a trial court’s decision regarding the admissibility of the collateral offenses.
 
 Id.
 
 As the supreme court explained in
 
 McLean,
 
 the less similar the collateral offenses are to the charged offense, the less relevant they are and the more likely it is that their probative value will be “substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.”
 
 Id.
 
 (quoting § 90.403, Fla. Stat. (2005)). The
 
 McLean
 
 court cautioned that, “[w]hen necessary to ensure that a defendant receives a fair trial, the trial court should either exclude the evidence or substantially limit its presentation so that it does not become a feature of the trial.”
 
 Id.
 
 at 1251. Evidence of similar past acts becomes a feature of the trial when it “transcends the bounds of relevancy to the crime being charged” and “the prosecution devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant.”
 
 Conde v. State,
 
 860 So.2d 930, 945 (Fla.2003) (quoting
 
 Williams v. State,
 
 117 So.2d 473, 475 (Fla.1960)).
 

 Here, the collateral offense evidence the trial court admitted was highly relevant due to Appellant’s defense that he did not know he had molested K.D. All of the acts were similar because they occurred against the same victim in a familial setting while the victim was asleep or attempting to go to sleep. The acts show an absence of mistake and a plan, particularly because the State adduced evidence that Appellant never molested K.D.’s sister, even though he claimed to have been unaware of his actions. Appellant argues that the number of similarities is insufficient. However, the number of similarities is not as important as the nature of the similarities in comparison to the purpose in admitting the evidence because, even under the general
 
 Williams
 
 rule standard, similarity is only a way of showing relevance. Appellant argues that the evidence was irrelevant because if he was unconscious of his actions during one incident, he also may have been unconscious of his actions during the others. The State correctly argues, however, that the evidence showed that Appellant targeted K.D., as opposed to any other person in the house. The State’s arguments at trial show that it used the evidence for this purpose.
 

 Appellant contends that the collateral offense evidence was unduly prejudicial because it tended to show that he was a child predator. However, as explained above, the evidence was made necessary by the defense strategy and the jury instructions. Each separate offense made it less likely that Appellant was molesting K.D. unconsciously because the evidence showed that, each time, Appellant targeted K.D. rather than her sister, who testified that she never had an experience similar to the ones K.D. described. Under these facts, we cannot agree with Appellant that the trial court abused its discretion in determining that the potential for this evidence to cause unfair prejudice substantially outweighed its probative value.
 

 In contesting the admission of the similar fact evidence, Appellant also argues such evidence improperly became a feature
 
 *816
 
 of the trial, due to the State’s theme that Appellant took K.D.’s childhood. This specific argument was not preserved for review by a contemporaneous objection. To preserve an argument for appeal, trial counsel must make an objection that is sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal.
 
 Castor v. State,
 
 365 So.2d 701, 703 (Fla.1978). If an error is not preserved, it may not form the basis for a reversal unless it constitutes fundamental error.
 
 See F.B. v. State,
 
 852 So.2d 226, 229 (Fla.2003). An error is generally not considered fundamental if it could have been readily cured by a contemporaneous objection.
 
 See Rodriguez v. State,
 
 664 So.2d 1077, 1077 (Fla. 3d DCA 1995).
 

 Below, Appellant argued that the evidence threatened to become a feature of the trial due to the number of incidents and the amount of time it would take for the State to elicit testimony about them. He did not raise any concerns regarding the State’s argument that K.D.’s childhood was taken. All of the discussion of the tendency of the evidence to become a feature of the trial occurred during the pretrial stage of the case. The theme of the State’s case emerged only at trial, where there was no objection. The unfair prejudice caused by the State’s theme could have been averted if Appellant had raised a proper objection when the State began its arguments regarding the loss of KD.’s childhood. Accordingly, we find no reversible error in the trial court’s allowing the State to use such a theme.
 

 To the extent Appellant argues that the evidence became a feature of the trial independently of the State’s theme, there is no error. A review of the State’s arguments reveals that it did not unduly focus on the collateral offenses, other than, perhaps, by forwarding this theme. The prosecutor went into more detail about the May 1, 2004, incident than any other. He also cautioned the jury that evidence of the other acts were to be considered for limited purposes, and he made clear that the relevance of that evidence was to show absence of mistake.
 

 III. Comment on the Presumption of Innocence
 

 Finally, Appellant argues that fundamental error occurred when the prosecutor made the following argument to the jury:
 

 The testimonial evidence in this case, the physical evidence in this case, has not only removed the presumption of innocence from this man, it has torn it away and shown him for what he did to [K.D.] on May of 2004 when he raped her.
 

 Fundamental error is that which “reach[e]s down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Odom v. State,
 
 15 So.3d 672, 675 (Fla. 1st DCA 2009) (citations omitted). As noted above, any error that could be readily cured by a contemporaneous objection is generally not considered fundamental.
 
 See Rodriguez,
 
 664 So.2d at 1077.
 

 Appellant contends that the challenged comment is indistinguishable from one deemed erroneous in
 
 Nurse v. State,
 
 932 So.2d 290 (Fla. 2d DCA 2005). In
 
 Nurse,
 
 the court opined that the following comment was “improper”:
 

 At the beginning of this trial in jury selection and when the judge read to you the law he explained to you that the defendant carries the presumption of innocence and that the State has the burden of proving this case beyond a reasonable doubt. [Mr. Nurse] no longer has that presumption.
 

 Id.
 
 at 292. Notably, the
 
 Nurse
 
 court did not decide the case on that basis or opine
 
 *817
 
 that the comment constituted fundamental error.
 
 See id.
 
 In fact, there was no basis for the
 
 Nurse
 
 court to decide whether the comment could rise to the level of fundamental error because the defense counsel in that case had raised a contemporaneous objection.
 

 The comment in the instant case is distinguishable from the comment in
 
 Nurse
 
 because, here, the comment was tied directly to the prosecutor’s perspective on the strength of the evidence, while in
 
 Nurse,
 
 the comment suggested that the presumption of innocence no longer applied at all, simply because the presentation of the evidence had concluded. Because the prosecutor in the instant case tied the comment to his belief that the evidence was strong, the comment comes across as an opinion about the evidence, rather than a statement of the law, unlike in
 
 Nurse.
 
 Moreover, any confusion the jurors may have had regarding the presumption of innocence was likely cleared up by the subsequent, proper instruction on the subject. Thus, Appellant has not shown error. Furthermore, even if we found the comment to be erroneous, we would not find it fundamentally so because any potential misinterpretation of the prosecutor’s comment could have been readily cured by a contemporaneous objection, followed by a curative instruction.
 

 CONCLUSION
 

 For the foregoing reasons, Appellant’s conviction for engaging in sexual activity with a person between the ages of twelve and eighteen while in a position of familial or custodial authority is AFFIRMED in all respects.
 

 WEBSTER and DAVIS, JJ., concur.
 

 [1]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959).
 

 [2]
 

 . Although the State did charge Appellant with two separate crimes occurring during the relevant timeframe, and Appellant was found guilty as charged, the trial court did not adjudicate Appellant guilty of count two. It is unclear what facts the State was relying on to support its allegations in count two.
 

 [3]
 

 . Arguably, the State could have isolated the date of conception to within a smaller period of time. However, Appellant has not contested the State’s contention that it could not do so. Instead, he has maintained simply that the date of conception is irrelevant, as he was not charged with impregnating the victim. This argument misses the point that the State’s intention was to charge him with committing the offense that led to the pregnancy.