PER CURIAM.
 

 Kenneth Dessaure appeals an order of the trial court denying his motion to vacate his conviction for first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus.
 
 [1]
 
 For the reasons explained below, we affirm the trial court’s order denying post-conviction relief. We also deny the habeas petition.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Dessaure was charged with the 1999 murder of Cindy Riedweg.
 
 Dessaure v.
 
 
 *481
 

 State,
 
 891 So.2d 455, 457 (Fla.2004). The jury found Dessaure guilty of first-degree murder.
 
 [2]
 
 And the trial court sentenced Dessaure to death.
 
 [3]
 

 Id.
 
 at 457.
 

 The evidence presented at Dessaure’s trial revealed that Dessaure lived with two other people in an apartment in Oldsmar, Florida, and that Ms. Riedweg moved into the apartment next door a couple of weeks before the murder.
 
 Id.
 
 On the day of the murder, another neighbor testified that he encountered Dessaure in the parking lot, and Dessaure told him that he thought someone was dead or dying in Ms. Ried-weg’s apartment.
 
 Id.
 
 The neighbor asked Dessaure how he knew this, and Dessaure replied that he went to Ms. Riedweg’s apartment to ask for ice and looked in.
 
 Id.
 
 The neighbor said Dessaure appeared nervous and that he told Dessaure to call 911 because he wanted nothing to do with the situation.
 
 Id.
 
 Thereafter, Dessaure called 911 and reported to the operators that his next-door neighbor was dead.
 
 Id.
 
 On the 911 tape, which was played for the jury at trial, Dessaure stated that he saw Ms. Riedweg outside sunbathing, he went to her apartment to see if she had any ice, and when she did not answer the door, he went in through the unlocked door and found her lying in the middle of the floor.
 
 Id.
 
 at 458.
 

 When the paramedics arrived, they entered Ms. Riedweg’s apartment and found her lying face down on the floor in a pool of blood.
 
 Id.
 
 She had stab wounds on her upper back and shoulders, she had no pulse, and she was not breathing.
 
 Id.
 
 After they rolled her over, they discovered that her throat had been slashed.
 
 Id.
 
 The assistant medical examiner testified that Ms. Riedweg had a total of fifty-three wounds including bruises, scrapes, pick marks, cuts, and stab wounds, and that her throat was slashed.
 
 Id.
 
 at 461. The assistant medical examiner further testified that
 

 [tjhere were five defensive wounds to the hands, three wounds that penetrated the trachea, three that damaged and collapsed the lungs, two that cut the exterior jugular vein, one that cut the liver, one that struck a vertebra, and one that cut a spinal nerve. [The assistant medical examiner] testified that Ried-weg could have remained conscious for four to six minutes after her lungs collapsed, and she could have survived from four to ten minutes. Electrical activity could have continued for a few minutes more, perhaps ten to fifteen minutes. Multiple stab wounds of the torso and neck were the cause of death.
 

 Id.
 

 Other evidence established that several blood stains matching Ms. Riedweg’s DNA profile were found on Dessaure’s shorts.
 
 Id.
 
 Dessaure’s footprint was discovered in Ms. Riedweg’s kitchen, and Dessaure’s semen was found on a towel in her bathroom and on a piece of fabric from her bedroom comforter.
 
 Id.
 

 In imposing the death sentence, the trial court found four aggravating circumstances: (1) the crime was committed while Dessaure was previously convicted of a felony and under community control; (2) Dessaure had been previously convicted of a felony involving the use or threat of violence; (3) the crime was especially hei
 
 *482
 
 nous, atrocious, or cruel; and (4) the crime was committed during a burglary.
 
 Id.
 
 at 464. The trial court found no statutory mitigating circumstances, but noted the following nonstatutory mitigating circumstances:
 

 (1) Dessaure was twenty-one years old (some weight); (2) Dessaure has the capacity and desire to be a loving parent (little weight); (3) Dessaure’s family life was dysfunctional while he was growing up, his parents abandoned him to be raised by his grandmother, and his older brother died in a traffic accident (some weight); (4) Dessaure has the capacity to form personal relationships (little weight); and (5) Dessaure was well behaved in court (little weight).
 

 Id.
 
 n. 4.
 

 This Court affirmed Dessaure’s conviction and sentence.
 
 Id.
 
 at 473. Dessaure subsequently filed a motion for postconviction relief in the trial court, which the trial court denied.
 
 [4]
 
 Dessaure now appeals the denial of postconviction relief. Dessaure has also filed a habeas petition alleging that his appellate counsel was ineffective.
 

 II. DESSAURE’S PENALTY PHASE CLAIMS
 

 Dessaure claims that the trial court erred in finding that Dessaure’s trial counsel was not ineffective for (1) failing to move for a competency determination after Dessaure waived the presentation of mitigation evidence to a penalty phase jury; and (2) failing to present the mitigation testimony of Dr. Michael Maher at his
 
 Spencer
 

 [5]
 

 hearing. Because Dessaure has failed to prove that his counsel’s performance was deficient or that the deficient performance prejudiced him, we affirm the trial court’s denial of relief.
 
 See Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 A. Competency Evaluation After Dessaure Waived Mitigation
 

 Dessaure first claims that his trial counsel was ineffective for allowing Dess-aure to waive his right to a jury in the penalty phase without ordering a competency hearing. Dessaure particularly relies on language contained in the forms he signed in waiving a penalty phase jury, namely that Dessaure joined the State in seeking the death penalty. Dessaure claims that this language is “extraordinary” and proves that he should have been given a second competency hearing. We disagree.
 

 Florida law provides that a defendant must be given a competency examination only if the court or defense counsel “has reasonable ground to believe that the defendant is not mentally competent to proceed.” Fla. R.Crim. P. 3.210(b). Once
 
 *483
 
 a defendant has been deemed competent, the presumption of competence continues throughout all subsequent proceedings.
 
 Boyd v. State,
 
 910 So.2d 167, 187 (Fla.2005) (citing
 
 Durocher v. Singletary,
 
 623 So.2d 482, 484 (Fla.1993)). A subsequent competency hearing is only required “if a bona fide question as to the defendant’s competency has been raised.”
 
 Id.
 
 (citing
 
 Hunter v. State,
 
 660 So.2d 244, 248 (Fla.1995)). If there is “no reason to suspect that a defendant is incompetent,” then “it cannot be deficient performance if counsel does not request a competency examination.”
 
 Nixon v. State,
 
 932 So.2d 1009, 1020 (Fla.2006) (“[T]rial counsel had no reason to request a competency determination [because defendant] had been examined by a mental health expert who did not give trial counsel any reason to delve further into competency.”).
 

 Here, defense counsel was not ineffective for not requesting an additional competency hearing for Dessaure. Prior to the beginning of trial, Dr. Maher evaluated Dessaure for competency and concluded that Dessaure was competent to stand trial and to make penalty phase decisions, even in light of his posttraumatic stress disorder and history of suicide attempts. In addition, three of Dessaure’s defense attorneys, Messrs. Cobb, Schwartzberg, and Watts, testified at an evidentiary hearing regarding their confidence in Dessaure’s competency. Mr. Cobb testified that he could not recall anything about the results of that examination that suggested Dess-aure was not competent to stand trial and assist counsel. Mr. Schwartzberg stated that he stood by Dessaure’s decision to waive his right to a penalty phase jury because Dessaure gave a considerable amount of thought to the waiver and that all three talked to Dessaure about it. Mr. Watts testified that he consulted Dr. Maher about the penalty phase, and both believed Dessaure was competent to make waiver-type decisions. Mr. Watts further testified that he spent roughly thirty hours with Dessaure discussing the case, Dess-aure’s background, and the penalty phase, and that Dessaure consistently maintained that he did not want a penalty phase.
 

 The record also shows that the trial judge engaged in multiple colloquies with Dessaure to confirm that his waivers were knowing and voluntary, that Dessaure understood his right to present mitigation evidence, and that his decision not to present mitigation was against his attorneys’ advice. In sum, nothing in the trial proceedings raised a bona fide question about Dessaure’s competency.
 

 We also disagree that the language contained in the signed waiver was “extraordinary” or by itself draws Dessaure’s competency into question. The record makes clear that Dessaure’s lawyers explained to him on multiple occasions that he should reconsider his decision to waive mitigation. His attorney was prepared to present mitigation and also proffered the mitigating circumstances in court. Dessaure had many opportunities to change his mind regarding mitigation. Therefore, the waiver was nothing extraordinary, but rather a signed acknowledgement of the possible result of his actions.
 

 Accordingly, defense counsel cannot be rendered ineffective for not requesting additional competency testing when Dess-aure waived his right to present mitigation.
 

 B. Testimony of Dr. Maher at the Spencer Hearing
 

 Dessaure next claims that his counsel was ineffective for not presenting the testimony of Dr. Maher at the
 
 Spencer
 
 hearing. We disagree.
 

 
 *484
 
 The law is well-established that a competent defendant may control decisions pertaining to his defense, including the presentation of mitigation evidence, and that counsel will not be rendered ineffective for following a competent defendant’s wishes.
 
 See Hamblen v. State,
 
 527 So.2d 800, 804 (Fla.1988) (“[I]n the final analysis, all competent defendants have a right to control them own destinies.”).
 

 Here, Dessaure repeatedly made it clear that he did not want to present mitigation to a penalty phase jury. Yet, despite Dessaure’s insistence that he did not want a penalty phase and despite his lack of cooperation, Dessaure’s defense counsel investigated all possible mitigation in preparation for the penalty phase. Defense counsel then proffered the mitigation to the trial court, including that Dr. Maher diagnosed Dessaure with posttraumatic stress disorder arising from childhood trauma within his family and that as a result of that disorder, at the time he committed the crime, he would have had difficulty conforming his behavior to the requirements of the law and would have been under extreme emotional disturbance.
 

 After each proffer of mitigation testimony, the trial judge asked Dessaure if he understood that this testimony could be used to establish a mitigating factor for the court to consider, and also if he understood that by not allowing counsel to present any evidence to support this proffer, the court would not consider it in sentencing. To each question, Dessaure answered that he understood. Dessaure also reaffirmed his decision not to present any evidence to support the mitigation and not to present any legal argument against any aggravating circumstance. After each proffer of mitigation, Dessaure was asked whether he was continuing to exercise his right not to present evidence of mitigation; and he insisted that he was.
 

 Later, at his family’s prompting, Dess-aure decided that he did want to present some mitigation at his
 
 Spencer
 
 hearing. As a result, defense counsel presented the mitigation testimony of Mary Parent, the mother of Dessaure’s child, and Louise Randal, Dessaure’s grandmother. Dess-aure also testified on his own behalf and asked the judge to impose a life sentence. Thereafter, defense counsel informed the court that Dessaure waived his right to present any additional testimony or evidence, and the following exchange took place:
 

 Court:
 
 What are you waiving now, Mr. Watts?
 

 Defense Counsel:
 
 Judge, further evidence. I have advised Mr. Dessaure that we’ve prepared a complete penalty phase and that we’ve proffered some and then we’ve presented some evidence. We could have asked this Court for more time to present Dr. Mayer or anybody else on the witness list. And that is the purpose of the waiver.
 

 Court:
 
 So, Mr. Dessaure, at this point you’re waiving your right to present any additional testimony or evidence at this time; is that right?
 

 Dessaure:
 
 Yes, sir.
 

 Then, Dessaure signed a written waiver stating that (1) he was aware that additional mitigating evidence existed and could be presented to the trial court as evidence; (2) he understood that the mitigation that was proffered was not evidence that could be weighed by the trial court; (3) his attorneys had advised him that they would be glad to call additional witnesses and present additional evidence and that the court would likely allow the presentation of evidence; and (4) “[hjaving been advised of the above, and understanding, I hereby waive presentation of additional mitigation
 
 *485
 
 and rely on the record as it stands, for the Court’s consideration of my sentence.”
 

 In sum, Dessaure’s counsel was prepared and proffered all mitigation at a sentencing hearing, including the findings of Dr. Maher. When Dessaure changed his mind about presenting some mitigation at the
 
 Spencer
 
 hearing, defense counsel presented the testimony of Ms. Randal and Ms. Parent. Mr. Watts then informed the trial court that he could also present the testimony of Dr. Maher, but that Dessaure did not wish to present additional mitigation. And Dessaure signed a waiver acknowledging as much. Defense counsel cannot be ineffective for following Dess-aure’s direction under these circumstances. Accordingly, we affirm the trial court’s denial of this claim.
 

 III. DESSAURE’S HABEAS CLAIMS
 

 Dessaure also filed a petition for habeas corpus claiming that his appellate counsel was ineffective for (1) failing to raise on direct appeal that the jury instructions constituted fundamental error by improperly instructing the jury on felony murder and other charges not contained in the grand jury indictment; and (2) failing to raise instances of prosecutorial misconduct.
 

 “[W]hen evaluating a claim for ineffective assistance of appellate counsel, this Court must determine: (1) whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.”
 
 Lowe v. State, 2
 
 So.3d 21, 42 (Fla.2008) (citing
 
 Pope v. Wainwright,
 
 496 So.2d 798, 800 (Fla.1986)). Because Dess-aure has not shown that his appellate counsel was ineffective according to these standards, we hold that he is not entitled to habeas relief.
 

 A. Challenging the Jurg Instructions on Direct Appeal
 

 Dessaure first claims that his appellate counsel was ineffective for not challenging the jury instruction on first-degree felony murder when the indictment charged first-degree premeditated murder. However, this Court has long held that this type of instruction is proper.
 
 See Williams v. State,
 
 967 So.2d 735 (Fla.2007). In
 
 Williams,
 
 this Court explained:
 

 “It is well established that an indictment which charges premeditated murder permits the State to prosecute under both the premeditated and felony murder theories.”
 
 Parker v. State,
 
 904 So.2d 370, 382-83 (Fla.2005). We have further held that “[t]he State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder.”
 
 Kearse v. State,
 
 662 So.2d 677, 682 (Fla.1995). Similarly, this Court has “repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory.”
 
 Gudinas [v
 
 .
 
 State
 
 ], 693 So.2d [953, 964 (Fla.1997) ].
 

 Williams,
 
 967 So.2d at 758-59. “Appellate counsel cannot be deemed ineffective for failing to raise a claim which ‘would in all probability’ have been without merit or would have been proeedurally barred on direct appeal.”
 
 Mansfield v. State,
 
 911 So.2d 1160, 1178 (Fla.2005) (quoting
 
 Williamson v. Dugger,
 
 651 So.2d 84, 86 (Fla.1994)). Consequently, appellate counsel cannot be considered ineffective here.
 

 
 *486
 
 Dessaure also asserts that appellate counsel was ineffective for failing to assert that the trial court erred by instructing the jury on sexual battery when it was not charged in the indictment and when there was insufficient evidence to support it. But this Court has also rejected the claim that the indictment must provide notice of the underlying felonies used to prove felony murder.
 
 See id.
 
 at 1178-79. “Because the State has no obligation to charge felony murder in the indictment, it similarly has no obligation to give notice of the underlying felonies that it will rely upon to prove felony murder.”
 
 Id.
 
 at 1179 (quoting
 
 Kearse v. State,
 
 662 So.2d 677, 682 (Fla.1995)). And despite Dessaure’s assertion to the contrary, there was ample evidence here to support that a sexual battery occurred — the victim was found naked and face down on the floor; Dess-aure’s semen was found on a towel near the victim’s body and on her bed linens; and a witness testified that Dessaure told him he struck the victim and began having sex with her. Therefore, this claim is meritless, and counsel cannot be ineffective for not raising it on appeal.
 

 B. Raising the Issue of Prosecutorial Misconduct
 

 Dessaure also argues that appellate counsel should have argued that the prosecutor’s arguments during closing were improper. He specifically objects to the last comments made after the prosecutor led the jury through all the evidence in the case:
 

 And when we started this trial he had a presumption of innocence and he only enjoyed that presumption at the start of the trial. Once the first witness was called, once the evidence began to be presented, the State chipped and chipped away at that cloak, that shield he can hide behind. And as you sit here now, he no longer enjoys that presumption because we have proven our case.
 

 We reject this claim for two reasons. First, this claim was not preserved by trial counsel with an objection, and, in the absence of fundamental error, “appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel’s failure to object.”
 
 Brown v. State,
 
 846 So.2d 1114, 1127 (Fla.2003) (quoting
 
 Johnson v. Singletary,
 
 695 So.2d 263, 266 (Fla.1996));
 
 see also Rodriguez v. State,
 
 919 So.2d 1252, 1281-82 (Fla.2005) (“Appellate counsel is not ineffective for failing to raise issues not preserved for appeal. However, an exception is made where appellate counsel fails to raise a claim which, although not preserved at trial, represents fundamental error.” (citations omitted)). Second, this claim is merit-less.
 

 In
 
 Easterly v. State,
 
 22 So.3d 807 (Fla. 1st DCA 2009), the First District Court of Appeal distinguished a prosecutor’s comment which states his opinion or belief that the evidence is strong from a prosecutor’s comment which projects a statement of the law. In
 
 Easterly,
 
 the prosecutor stated during closing:
 

 The testimonial evidence in this case, the physical evidence in this case, has not only removed the presumption of innocence from this man, it has torn it away and shown him for what he did to [K.D.] on [sic] May of 2004 when he raped her.
 

 22 So.3d at 816. The First District held that the comment did not constitute fundamental error because it “was tied directly to the prosecutor’s perspective on the strength of the evidence.”
 
 Id.
 
 at 817;
 
 see also Dailey v. State,
 
 965 So.2d 38, 44 (Fla.2007) (“Regarding the prosecutor’s statements concerning Dailey’s presumption of innocence, we agree with the trial court
 
 *487
 
 that when read in context, .the comments appear to be a statement by the prosecutor of her belief that the State satisfied its burden of proof. Therefore, counsel’s failure to object was not deficient.”).
 

 Likewise here, the prosecutor’s comments do not constitute error because the comments were directly tied to the prosecutor’s perspective on the strength of the evidence. Specifically, after the prosecutor reviewed all of the evidence presented in the case, she stated that, although Dess-aure enjoyed the presumption of innocence at the beginning of the trial, “the State chipped and chipped away at that cloak [and] he no longer enjoys that presumption because we have proven our case.” These comments clearly reflect the prosecutor’s opinion of the evidence and are not projecting a statement of the law. Accordingly, this issue is without merit. And appellate counsel cannot be rendered ineffective for not raising an unpreserved and otherwise meritless claim on appeal.
 

 Dessaure also argues that his appellate counsel was ineffective for failing to raise on direct appeal that the prosecution knowingly presented the false testimony of two jailhouse informants who testified about statements Dessaure made to them. This claim is meritless because Dessaure has not proven that the informants’ testimony was false or that the prosecution knew the testimony was false.
 
 See Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 768, 31 L.Ed.2d 104 (1972).
 

 Accordingly, we reject this claim.
 

 IV. CONCLUSION
 

 Based on the foregoing, we affirm the trial court’s order denying Dessaure’s rule 3.851 motion, and we deny his habeas petition.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const.
 

 [2]
 

 . “The jury, utilizing a general verdict form, found Dessaure guilty of first-degree murder as charged. It did not specify whether he was found guilty of premeditated first-degree murder, felony first-degree murder, or both. However, the jury was instructed as to both premeditated murder and felony murder."
 
 Dessaure,
 
 891 So.2d at 457 n. 1.
 

 [3]
 

 . Dessaure waived his right to a penalty phase jury.
 

 [4]
 

 . Dessaure’s postconviction motion alleged: (1) his counsel was ineffective in failing to investigate and file pretrial motions; (2) his counsel was ineffective during jury selection; (3) his counsel was ineffective for failing to develop a theory of defense other than one of mere reasonable doubt; (4) his counsel was ineffective for allowing Dessaure to waive a jury at the penalty phase; (5) he was denied effective assistance of counsel during the penalty phase; (6) his due process rights were violated because the State failed to disclose exculpatory or impeaching testimony and presented false evidence, testimony, and argument to the jury; (7) his counsel was ineffective for failing to discuss his right to testify at the penalty phase; (8) execution by lethal injection is cruel and unusual punishment; (9) he should be allowed to withdraw his waiver of the right to present mitigation to a jury at the penalty phase, his waiver of argument for a life sentence, and his waiver of presentation of additional mitigation evidence; and (10) the cumulative effect of constitutional error throughout the proceedings denied him his constitutional rights.
 

 [5]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).