# Supreme Court of Florida

_____

No. SC19-1624

_____

**KIM JACKSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC21-502

_____

**KIM JACKSON,**
Petitioner,

vs.

**RICKY D. DIXON, etc.,**
Respondent.

June 30, 2022

PER CURIAM.

Kim Jackson appeals the circuit court's order denying numerous guilt-phase claims raised in his postconviction motion filed under Florida Rule of Criminal Procedure 3.851 and petitions

this Court for a writ of habeas corpus.[1]  For the reasons that follow, we affirm the circuit court's order and deny the habeas petition.

## I.    BACKGROUND

Debra Pearce was brutally stabbed to death at her home in Jacksonville.  Responding law enforcement found Pearce's bloody and bruised body face-down in the kitchen.

Michael Knox, a crime scene investigator, observed that Pearce had been stabbed multiple times in the neck and chest.  One stab wound was partially covered by a five-inch-long knife that remained plunged in Pearce's chest.  Upon further examination, Knox discovered a detached hair on the back of Pearce's right calf and a small folding pocketknife under her body.  Both items were later submitted to the Florida Department of Law Enforcement (FDLE) for DNA testing.  Additionally, Knox noticed a bloody fingerprint on the kitchen sink, which was located right above Pearce's body.  Knox processed and photographed the fingerprint, and law enforcement removed the sink from the home.

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), (9), Fla. Const; *see also Smith v. State*, 330 So. 3d 867, 875 n.2 (Fla. 2021) (determining that Court has jurisdiction despite circuit court ordering a new penalty phase in postconviction proceeding).

Law enforcement also sought to find witnesses, but none had observed the crime or the events surrounding it. Consequently, the investigation, led by Detective Craig Waldrup, focused on the physical evidence.

Michelle Royal, a fingerprint examiner with the Jacksonville Sheriff's Office, analyzed the sink fingerprint and determined that it was not of value, meaning that it would not be useful in identifying a suspect. Detective Waldrup sought additional analysis from another sheriff's office. However, that further analysis did not result in any leads.

Meanwhile, almost two years after the murder, Leigh Clark—a DNA analyst for the FDLE—tested the hair found on Pearce's leg. She extracted a full DNA profile from it and later uploaded the profile to the CODIS[2] database. The submitted profile matched the known DNA profile of Jackson, who was then serving a lengthy prison sentence in Georgia.

---

2. CODIS stands for "Combined DNA Index System[,] [which] connects DNA laboratories at the local, state, and national level." *Maryland v. King*, 569 U.S. 435, 444 (2013).

Having learned of the DNA match, Detective Waldrup then asked the FBI to compare Jackson's known prints with the sink fingerprint. An FBI analyst concluded that the fingerprint matched Jackson's right ring finger.

Based on these two leads, Detective Waldrup interviewed Jackson at the Georgia prison where he was housed. During the interview, Detective Waldrup asked Jackson if he knew Pearce or had ever been to her house. In conjunction with these questions, Detective Waldrup showed him pictures of Pearce, her home, and the surrounding area. Jackson denied ever knowing or seeing Pearce. Nor, according to him, had he ever been to the home. Jackson would later concede that these statements were false.

Ultimately, almost four years after the murder, the State charged Jackson with first-degree murder in connection with Pearce's death, later filing a notice of intent to seek the death penalty. Though Jackson challenged the lawfulness of the death penalty, he did not seek dismissal of the first-degree-murder charge.

At Jackson's trial, the State called a number of witnesses, including Detective Waldrup, Knox, Clark, and two fingerprint

experts. Clark testified that the detached hair found on Pearce's leg was a full marker match with Jackson's known DNA. She further opined that the hair was not naturally shed, briefly alluding to "several published papers in the Journal of Forensic Sciences." She also gave testimony on the pocketknife, indicating that she obtained a mixed profile from blood on it. Pearce was a contributor, but Jackson was not. DNA samples were also obtained from inside Pearce's vehicle, specifically the steering wheel cover. As for a mixed sample obtained from that cover, Clark indicated that Jackson—as a male—could not be excluded as a minor contributor.

The State's two fingerprint experts offered opinion testimony on the sink fingerprint, both stating that it matched a known print from Jackson's right ring finger. Moreover, both agreed that Jackson's right ring finger was coated in something wet at the time he created the print on the sink. When asked on cross-examination whether blood could preserve a preexisting print, one of the experts opined that she had not observed such a situation "in her training and experience."

After the State rested, Jackson requested a judgment of acquittal. He argued that the State presented a wholly

circumstantial case, which failed to rebut his reasonable hypothesis of innocence—namely that he was not present for the murder and that his hair had been become detached while he was inside Pearce's home prior to the murder and later came to rest on her leg. Rejecting that argument, "[t]he trial court ruled the evidence, when viewed in the light most favorable to the State, negated all reasonable hypotheses of innocence, and denied the motion." *Jackson v. State*, 180 So. 3d 938, 950 (Fla. 2015). In particular, the court relied on the evidence of the bloody fingerprint as establishing Jackson's presence in the home for the murder.

Jackson then presented his case, which primarily consisted of evidence in support of an alibi defense. Jackson and four other witnesses—his father, his wife (Deborah Jackson), his sister (Penny Williams), and a friend (Rose Franklin)—testified that Jackson had been in Georgia celebrating his birthday during the period of time encompassing the murder. In addition, Jackson sought to explain the incriminating answers given to Detective Waldrup during the prison interview. Jackson also called as a witness Michelle Royal, the Jacksonville Sheriff's Office analyst who determined the sink fingerprint to be of no value. On cross-examination, she testified

that "even prints of no value can be used to exclude suspects, . . . Jackson could not be excluded as the individual who left the sink fingerprint, and . . . similarities existed between the sink fingerprint and the known print of Jackson." *Id.* at 944.

Ultimately, the jury found Jackson guilty of first-degree murder, and, following the penalty phase, it recommended a sentence of death by a vote of 8 to 4. Accepting that recommendation, the trial court sentenced Jackson to death.

Jackson appealed, raising five issues for our review.[3] Rejecting his arguments, we affirmed on all issues. *Id.* at 949-64. Jackson then filed a petition for writ of certiorari in the United States Supreme Court, which was denied. *Jackson v. Florida*, 578 U.S. 979 (2016).

---

3. Jackson argued that (1) the State presented insufficient evidence to establish that (a) he killed Pearce, (b) the murder was premeditated, or (c) he was an active participant in the murder; (2) the prosecutor made improper comments during closing argument rising to the level of fundamental error; (3) the trial court erred in finding that the heinous, atrocious, or cruel aggravator had been proven; (4) his death sentence was disproportionate; and (5) *Ring v. Arizona*, 536 U.S. 584 (2002), rendered Florida's death-penalty statute constitutionally infirm.

Less than a year later, Jackson filed a postconviction motion in circuit court, which, as later amended, raised over twenty claims for relief. The circuit court ruled that Jackson was entitled to a new penalty phase based on *Hurst v. State*,[4] granted an evidentiary hearing on six guilt-phase claims,[5] and denied or reserved ruling on the balance of the claims. After the hearing, the court entered an order denying the pending claims, and, consistent with its prior ruling, vacated Jackson's death sentence under *Hurst*. Jackson now appeals and seeks a writ of habeas corpus.

---

4. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).

5. Those claims included the following: trial counsel was ineffective in investigating and challenging the State's DNA evidence (claim seven); trial counsel was ineffective in investigating the fingerprint evidence (claim eight); trial counsel was ineffective for failing to adequately prepare Jackson to testify at trial (claim ten); trial counsel was ineffective for failing to file a pretrial motion to dismiss based on the preindictment and prearrest delays (claim eleven); trial counsel was ineffective for failing to properly and timely investigate the alibi defense (claim twelve); trial counsel was ineffective for failing to properly prepare Deborah Jackson (Jackson's wife) for her trial testimony (subclaim of claim twelve).

## II.   ANALYSIS

## A.   Postconviction Appeal

Jackson argues that the circuit court erred in denying his claims of ineffective assistance of trial counsel.  We disagree and explain below why his arguments lack merit.

Ineffectiveness claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Nelson v. State*, 73 So. 3d 77, 84 (Fla. 2011).  We have recently described that standard as follows:

> Under *Strickland v. Washington*, a defendant alleging that he received ineffective assistance of counsel has the burden to demonstrate that counsel's performance fell below an objective standard of reasonableness.  In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *Strickland*, 466 U.S. at 687.  "Both prongs of the *Strickland* test present mixed questions of law and fact." *Johnson v. State*, 135 So. 3d 1002, 1013 (Fla. 2014).  "In reviewing a trial court's ruling after an evidentiary hearing on an ineffective assistance of counsel claim, this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts." *Id.* (quoting *Mungin v. State*, 932 So. 2d 986, 998 (Fla. 2006)).
>
> As to the first prong, the defendant must establish "that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A court reviewing the second prong must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

*Smith*, 330 So. 3d at 875 (some citations omitted).

We now consider each ineffectiveness claim as ruled on by the circuit court.

### 1. Fingerprint Evidence

Jackson argues that the circuit court erred in denying his claim that counsel was ineffective in challenging the State's fingerprint evidence. According to him, counsel was ineffective for presenting inconsistent arguments to the jury as to the fingerprint evidence and for not objecting to certain testimony from the State's fingerprint experts and to the prosecutor's improper closing argument denigrating his fingerprint expert, Michelle Royal. His arguments lack merit.

As for the inconsistent-theories argument, the State properly observes that Jackson failed to raise it in his postconviction motion. Accordingly, he has failed to timely raise this specific argument, and it has been waived. *State v. Poole*, 297 So. 3d 487, 494 (Fla. 2020) (failure to timely raise specific argument results in waiver). However, even had this argument been properly preserved, it would not support relief. Trial counsel conceded during opening statement that the sink fingerprint was Jackson's but later called Royal who indicated that the print had no value. Though the concession might be at odds to some extent with portions of Royal's testimony, Jackson has cited no case law which holds counsel deficient merely for presenting alternative theories to the jury. And we decline to so hold here.

Jackson's failure-to-make-objection argument fares no better. During their testimony, the State's fingerprint experts made various references to nontestifying examiners to which trial counsel did not object. According to Jackson, counsel should have objected on the ground that such testimony was irrelevant, improperly bolstered in-court testimony, and violated his confrontation rights under the Sixth Amendment. However, Jackson's argument is undeveloped

- 11 -

and conclusory. *See Sheppard v. State*, 47 Fla. L. Weekly S65, S70-S71 (Fla. Mar. 10, 2022) (affirming on subclaim where appellant presented vague and conclusory argument (citing *Hannon v. State*, 941 So. 2d 1109, 1139 (Fla. 2006))); *Rivera v. State*, 260 So. 3d 920, 929 (Fla. 2018). Thus, Jackson has not demonstrated entitlement to relief based on this argument.

As for the prosecutor's criticism of Royal—including referring to her as "old school"—we conclude that Jackson has failed to establish deficiency. Specifically, he has not demonstrated that counsel lacked a reasonable strategic reason for not objecting. Notably, as part of the comments on Royal, the prosecutor praised Royal in certain respects. Thus, viewing the comments in their entirety, counsel may have determined that the negative aspects were not so unfavorable as to warrant an objection. *Sheppard*, 47 Fla. L. Weekly at S68 (recognizing that defendant bears burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy' " (quoting *Strickland*, 466 U.S. at 689)).

In sum, Jackson has not demonstrated entitlement to relief as to this claim.[6]

## 2. Preparation to Testify

Jackson argues that the circuit court erred in denying his claim that counsel was ineffective for failing to properly prepare him to testify at trial. According to Jackson, his attorneys gave him conflicting advice on whether he should or should not testify, failed to warn him about the hazard of appearing selfish and callous toward Pearce, and miscalculated the number of felonies for which he had been convicted. Jackson is not entitled to relief as to this claim either.

For starters, Jackson has failed to preserve his conflicting-advice argument as he did not seek relief or assert ineffectiveness on this basis in his motion below. *See Poole*, 297 So. 3d at 494.

---

6. Jackson appears to suggest that defense counsel was deficient for not presenting additional evidence undermining the State's proof that he was the source of the sink fingerprint. To the extent he is making this argument, it has no merit. At the hearing, Jackson presented no evidence undermining that proof. Accordingly, he has failed to meet his evidentiary burden under *Strickland*. *See Lynch v. State*, 2 So. 3d 47, 70 (Fla. 2008) ("[T]he burden is on the defendant to affirmatively satisfy both prongs of the *Strickland* framework.").

But, even if the issue had been preserved, it would not support relief. Jackson has supplied no authority requiring all attorneys on a defense team to be in agreement on the *defendant's* decision to testify. *See Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997) ("[T]he ultimate decision regarding whether to testify belongs to the defendant."). Here, counsel offered sensible views on the benefits and drawbacks of testifying—giving Jackson the benefit of both perspectives but leaving the ultimate decision to him. *See Brant v. State*, 197 So. 3d 1051, 1076 (Fla. 2016) ("Trial counsel did not perform deficiently by explaining all of Brant's options to him, including the positives and the negatives of those options, and then allowing Brant to make the decision on his own."). We find no deficient performance in so doing.

Jackson's failure-to-advise argument fares no better. Specifically, he argues that counsel failed to instruct him to avoid looking selfish and insensitive before the jury. However, he identifies no case finding counsel deficient for failing to offer advice on something that is quite obvious, i.e., that it may be beneficial to present oneself positively to the jury. Perhaps more importantly, Jackson improperly discounts the advice counsel actually gave to

him.  Specifically, counsel offered advice on the following topics: (1) the testimony he should give, (2) subjects to be avoided—like past crimes, (3) "the specifics of defense[s]," and (4) the need to be honest and answer all questions unless an objection has been sustained.  Given the facts of this case, we find that counsel's advice meets objective standards of reasonable performance.  *See Taylor v. State*, 3 So. 3d 986, 996-97 (Fla. 2009).

Jackson's wrong-number-of-convictions argument also fails. At trial, Jackson testified to having been convicted of five felonies. He correctly notes—consistent with the State's concession just prior to the penalty phase—that the actual number of felonies was four. However, *Strickland* does not provide relief for all errors or omissions.  *See Patrick v. State*, 302 So. 3d 734, 740 (Fla. 2020). Rather, a defendant must demonstrate a "serious" error or omission, meaning an error showing that the defendant's counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id.*  Overcalculating—by one—the number of felonies was an error.  But it was not a serious one in light of the fact that Jackson had four other felony convictions.  The difference for impeachment purposes of five felonies versus four is not significant.

- 15 -

What is more, Jackson's credibility had already been sharply undermined by his dishonesty with Detective Waldrup during the interview. Thus, based on these specific facts, we conclude that this miscalculation was not "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Finally, to the extent Jackson is arguing that one of his attorneys persuaded him to testify against his better judgment, that argument is inconsistent with the record. At trial, during a lengthy colloquy, Jackson affirmed to the court that he had sufficient time to speak with his attorneys on the issue of testifying. He indicated that he wanted to testify, and he made that decision freely, voluntarily, and without coercion. *See Reynolds v. State*, 99 So. 3d 459, 485 (Fla. 2012) (relying on transcript to reject claim that court failed to adequately question defendant on his decision to testify); *Johnson v. State*, 22 So. 3d 840, 844 (Fla. 1st DCA 2009) (finding record refuted claim that counsel forced defendant to accept plea deal).

Accordingly, Jackson has not shown error in the circuit court's denial of this claim.

### 3. Alibi

Jackson also challenges the circuit court's denial of his claim that counsel was deficient for failing to properly investigate and present his alibi defense. We affirm that ruling.

Jackson first contends that counsel was ineffective for failing to bring out additional facts from Penny Williams. At trial, Penny Williams gave testimony in support of Jackson's alibi defense, i.e., that Jackson was celebrating his birthday in Georgia with his family when the murder occurred. Later, at the evidentiary hearing, Williams revealed that she had just lost her job and that the loss of employment solidified in her mind that this birthday visit was in 2004—the same year in which Pearce was murdered. According to Jackson, failing to bring out that evidence constitutes deficient performance. This subclaim lacks merit for two reasons.

First, Jackson failed to timely raise this argument below. Accordingly, this specific argument has not been preserved for appeal. *See Poole*, 297 So. 3d at 494. Second, the argument fails on the merits. The State properly observes that Penny Williams did provide a plausible real-world reason for recalling Jackson's trip to Georgia and the record supports the State's point. When asked

during trial if Williams was certain she saw Jackson that weekend in 2004, she stated, "Yes, cause I seen his -- he brought his daughter to see me. That was the only time I could see her . . . ." In light of this evidence presented at trial, Jackson cannot show that defense counsel was deficient for refraining from introducing additional, comparable evidence. *See Wheeler v. State,* 124 So. 3d 865, 881 (Fla. 2013).

Jackson further claims that counsel was ineffective for failing to bring out the fact that his birthday in 2004 was his last one before the Georgia incarceration. This fact, according to him, would have further bolstered his alibi defense.

At trial, the alibi witnesses avoided this topic, doing so at the urging of counsel. Later, at the evidentiary hearing, counsel provided a strategic reason for deciding to avoid the topic. Defense counsel testified that he did not want to highlight the fact that Jackson was serving a lengthy sentence for a serious crime. We agree with the circuit court that this strategic decision was reasonable under the circumstances. Of note, Jackson committed this serious crime around the same time as the murders. We

further stress that avoiding calling attention to his incarceration did not preclude the presentation of a coherent alibi defense.

Finally, Jackson contends that counsel's 17-month delay in investigating the alibi defense was patently unreasonable. That unreasonable delay, he says, resulted in the loss of evidence exonerating him. However, as the circuit court properly noted, Jackson only speculates as to what evidence might have been lost as a result of the delay. Thus, Jackson has failed to carry his evidentiary burden on this point and the circuit court correctly rejected this claim. *See Lynch*, 2 So. 3d at 70.

### 4. Deborah Jackson

In addition, Jackson argues that the circuit court erred in denying his claim that counsel was deficient for failing to properly prepare Deborah Jackson to testify at trial and for failing to bring out testimony that would have ameliorated the effect of impeachment evidence. We disagree.

At the evidentiary hearing, Deborah Jackson testified that counsel spent only 15 minutes with her in preparation for her trial testimony. In Jackson's view, that amount of time was simply too short to meaningfully prepare her. However, Jackson has

marshalled no case showing that 15 minutes of trial preparation necessarily falls below objective standards of reasonable performance in all circumstances. And, based on our review of the record, we conclude that Jackson has not demonstrated that the advice given was unreasonable under *Strickland*. For one thing, Deborah Jackson's trial testimony involved telling the jury a straightforward account as to Jackson's whereabouts during the relevant time frame. For another, Jackson does not identify what additional testimony she could have given if counsel had simply spent more time with her or given her more thorough advice.

Jackson also cannot demonstrate error in the court's rejection of his subclaim pertaining to counsel's not bringing out ameliorating circumstances surrounding Deborah Jackson's bad-check conviction. That conviction was used to impeach her during trial. At the evidentiary hearing, Deborah Jackson testified that the conviction resulted from conduct occurring over 15 years before the trial. She also indicated that she wrote the bad check during a difficult time in her life and did so without any fraudulent intent.

We agree with the circuit court that Jackson failed to show deficient performance or prejudice. Though Jackson is likely

correct that defense counsel *could* have brought out some circumstances that he deems ameliorating, the State properly notes that it would have been able on recross-examination to emphasize the elements of the crime—including the mens rea of "intentional dishonesty." *Cf. Wilcox v. State*, 143 So. 3d 359, 373 (Fla. 2014) (noting that prosecutor may refute "false impression" witness gives about conviction (citing *Fotopoulos v. State,* 608 So. 2d 784, 791 (Fla.1992))); *Rogers v. State*, 964 So. 2d 221, 223 (Fla. 4th DCA 2007) (discussing circumstances when prosecutor may bring out details about crime). Thus, if counsel had done what Jackson claims should have been done, the jury would likely have heard not only ameliorating circumstances but also additional evidence undermining her credibility. In light of the strong possibility that the State would have brought out additional evidence damaging her credibility, Jackson cannot show that "no competent counsel" would have refrained from eliciting the ameliorating evidence under the circumstances of this case. *See Hammond v. Hall,* 586 F.3d 1289, 1324 (11th Cir. 2009).

Thus, Jackson is not entitled to relief as to this claim.

### 5. Motion to Dismiss Charges

Jackson argues that the circuit court erred in denying his claim that trial counsel was deficient for failing to file a motion to dismiss the murder charge on the basis of prosecutorial delay. In denying this claim, the circuit court ruled that a motion to dismiss for pretrial delay would have been meritless. We agree that Jackson is not entitled to relief. In so deciding, we reconsider our case law on the due process standard for preindictment delay.

In *Rogers v. State*, 511 So. 2d 526, 531 (Fla. 1987), we adopted, without significant discussion, a balancing test to determine if preindictment delay violated due process. That test traced back to the Fifth Circuit's decision in *United States v. Townley*, 665 F.2d 579 (5th Cir.1982)). We described the *Townley* test as follows:

> When a defendant asserts a due process violation based on preindictment delay, he bears the initial burden of showing actual prejudice. . . . If the defendant meets this initial burden, the court then must balance the demonstrable reasons for delay against the gravity of the particular prejudice on a case-by-case basis. The outcome turns on whether the delay violates the fundamental conception of justice, decency[,] and fair play embodied in the Bill of Rights and fourteenth amendment.

*Rogers*, 511 So. 2d at 531 (citing *Townley*, 665 F.2d at 581-82).

Since we decided *Rogers*, the Fifth Circuit has receded from the *Townley* balancing test. *United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996). In doing so, the Fifth Circuit cogently explained the flaws in the *Townley* balancing test, reasoning:

> The *Townley* test purports to weigh or balance the extent or degree of the actual prejudice against the extent to which the government's "good faith reasons" for the delay deviate from what the court believes to be appropriate. However, what this test seeks to do is to compare the incomparable. The items to be placed on either side of the balance (imprecise in themselves) are wholly different from each other and have no possible common denominator that would allow determination of which "weighs" the most. Not only is there no scale or conversion table to tell us whether eighty percent of minimally adequate prosecutorial and investigative staffing is outweighed by a low-medium amount of actual prejudice, there are no recognized general standards or principles to aid us in making that determination and virtually no body of precedent or historic practice to look to for guidance. Inevitably, then, a "length of the Chancellor's foot" sort of resolution will ensue and judges will necessarily define due process in each such weighing by their own " 'personal and private notions' of fairness," contrary to the admonition of [*United States v. Lovasco*, 431 U.S. 783 (1977)].
>
> Apart from the above difficulty, grounding a due process violation on the basis of good faith but inadequate, ineffective, or insufficient governmental personnel or management leading to preindictment delay runs counter to two basic constitutional principles. In the first place, "[h]istorically, this guarantee of due

- 23 -

process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property," *Daniels v. Williams,* 474 U.S. 327, 331 (1986), and hence "the Due Process Clause . . . is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." *Davidson v. Cannon,* 474 U.S. 344, 347 (1986). Contrary to these principles, however, the *Townley* test would find a due process violation where the government acted in good faith and did not deliberately seek to prejudice the party ultimately accused.

Finally, serious separation of powers concerns are implicated. Here, for example, the panel concluded that the reasons for the delay—"lack of manpower and the low priority which this investigation was assigned"—were "insufficient to outweigh the actual prejudice to Crouch and Frye." [*United States v. Crouch*, 51 F.3d 480, 483 (5th Cir. 1995) (vacated panel decision)]. Finding these reasons "insufficient" is in substance determining that greater manpower *should* generally have been allocated to investigation and prosecution in that jurisdiction, and that a higher priority *should* have been assigned to this particular investigation. Yet those decisions are ones essentially committed to the legislative and executive branches, and the case for judicial second guessing is particularly weak where it is directed at preindictment conduct and is supported not by any specific constitutional guaranty or by any long-established tradition of judicial oversight, but only by the general contours of the due process clause.

*Crouch,* 84 F.3d at 1512-13 (footnotes omitted) (some citations omitted).

For additional support, the Fifth Circuit looked to the United States Supreme Court's decision in *Arizona v. Youngblood,* 488 U.S.

- 24 -

51, 58 (1988) (holding in related context of destruction of evidence that due process is not violated unless loss of evidence resulted from bad faith on part of police). *Crouch*, 84 F.3d at 1511, 1513 n.17. The Fifth Circuit further observed that its disapproval of *Townley* was consistent with the majority rule in the federal circuit courts. *Id.* at 1511.

Based on these persuasive justifications, we conclude that the *Rogers* balancing test is clearly erroneous. Having so concluded, we now consider whether there is any reason for us *not* to recede from it. *See Poole*, 297 So. 3d at 507 (providing stare decisis framework).[7]

Jackson has not made that showing. He does not claim to have relied on the *Rogers* balancing test at all. *See id.* ("The critical consideration ordinarily will be reliance."); *cf. State v. Maisonet-Maldonado*, 308 So. 3d 63, 69-70 (Fla. 2020) (noting that defendant did not claim to have relied on rule of criminal liability from which Court was receding). Instead, Jackson claims that the *Rogers* balancing test has been workable for decades. Even if that were so,

---

7. We summarily reject Jackson's argument that the *Poole* stare decisis framework does not apply.

we conclude that this reason alone is insufficient for retaining the clearly erroneous balancing test.

Thus, based on the analysis above, we recede from the *Rogers* balancing test. We now align ourselves with the majority of federal circuit courts and hold that a due process claim for preindictment delay requires a showing of substantial prejudice to the defendant and bad faith on the part of the State. *E.g., United States v. Stokes,* 124 F.3d 39, 47 (1st Cir. 1997); *United States v. Stierwalt,* 16 F.3d 282, 285 (8th Cir. 1994); *United States v. Foxman,* 87 F.3d 1220, 1223 (11th Cir. 1996).

Application of this standard here supports the circuit court's denial of Jackson's claim. There is simply no evidence in the record that the length of time from the murder to the indictment was the product of bad faith on the part of the State. And Jackson does not claim otherwise. Accordingly, without evidence of bad faith, Jackson cannot establish a due process violation for preindictment delay; and, as a consequence, he cannot establish the prejudice

necessary to succeed on an ineffectiveness claim. *See Lockhart v. Fretwell*, 506 U.S. 364, 369-72 (1993).[8]

## 6. DNA Evidence

Jackson also argues that he is entitled to a new trial because his counsel was deficient in multiple respects in investigating and challenging the State's DNA evidence. He is wrong.

At trial, Clark testified that the DNA profile developed from the detached hair on Pearce's leg was a full marker match to Jackson's known DNA, that the hair had not been naturally shed based on the fact that she was able to develop a full profile from it, and that Jackson could not be excluded as a minor donor to a mixed profile recovered from the steering wheel cover in Pearce's van.

Later, at the evidentiary hearing, Jackson presented the testimony of two DNA experts to demonstrate that trial counsel was ineffective in challenging Clark's trial testimony. Both experts testified that Clark did not fully comply with all FDLE protocols as

---

8. We reject Jackson's assertion that we must remand to the circuit court so that he has an opportunity to develop evidence pertaining to the bad-faith requirement. Even under the former standard in *Rogers*, Jackson had reason to introduce evidence of bad faith, but he failed to do so.

to certain samples.[9]  One expert asserted that Jackson should have been excluded as a possible source of the DNA in the van.  That expert also opined that Clark was wrong to say that a full DNA profile could not be developed from a naturally shed hair.  That expert also posited several theories as to how the detached hair could have innocently come to rest on Pearce's leg after she was killed.

The circuit court denied Jackson's DNA-based claim on lack-of-prejudice grounds.  We agree that Jackson cannot demonstrate prejudice and do not address the deficiency prong except to say that Jackson failed to prove that counsel was deficient for not objecting to Clark's reference to the published papers and for not presenting expert testimony on possible theories of hair transference.[10]

---

9.  Those samples did not include the DNA recovered from the detached hair.

10.  Clark's reference to the published papers was brief and not particularly prejudicial.  *See Hubbard v. Haley*, 317 F.3d 1245, 1259 (11th Cir. 2003) ("[D]efense counsel, in defending their client's interests, need not urge every conceivable objection the law would provide.").  As for the additional theories of hair transfer, we find that the theories advanced at the evidentiary hearing were not beyond the ordinary understanding of jurors.  Thus, no expert was needed to convey them to the jury.  *See Mitchell v. State*, 965 So. 2d 246, 251 (Fla. 4th DCA 2007) ("Expert testimony should be

- 28 -

Jackson's postconviction experts did not undermine Clark's primary conclusions. Those conclusions were that the detached hair on the back of Pearce's leg was Jackson's and that the hair was not naturally shed. At the evidentiary hearing, both of Jackson's experts essentially conceded the accuracy of the first conclusion. And neither expert provided any testimony that the amount of DNA extracted from the hair at issue could come from a naturally shed hair.

Additionally, Jackson's expert testimony—that he should be excluded as a minor donor to the mixed sample in the van—does not help him. Of note, the steering wheel DNA evidence was not a key piece of evidence for the State. Indeed, the jury simply heard that as a male, Jackson could not be excluded as a possible contributor to the steering wheel sample. The more damaging aspect of the van-related evidence was its location. Several weeks after the murder, police found the van within a mile and a half of Jackson's residence. And, even if Jackson should have been

---

excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts.").

excluded as a contributor to the steering wheel DNA, that would not undermine Clark's two primary conclusions as to the detached hair.

Finally, the hair DNA evidence was not the only proof of Jackson's guilt. Jackson left a bloody fingerprint on the kitchen sink. According to the trial evidence, the nature of the print demonstrates that Jackson had blood on his finger when he touched the sink. That evidence establishes Jackson's presence in Pearce's home at the time of the murder. Additionally, during his prison interview with Detective Waldrup, Jackson lied about not knowing the victim and falsely indicated that he had never been in her home. That constitutes evidence of a guilty mind. *See Hayward v. State*, 24 So. 3d 17, 39 (Fla. 2009) ("Evidence of conduct or speech of the accused which demonstrates a consciousness of guilt is relevant since it supplies the basis for an inference that the accused is guilty of the offense."); *United States v. Holbert*, 578 F.2d 128, 129 (5th Cir. 1978) ("[F]alse exculpatory statements may be used . . . as substantive evidence tending to prove guilt."). And, as noted above, Pearce's vehicle was found near Jackson's residence several weeks after the murder.

In light of the hair DNA evidence (which Jackson has not undermined) and the existence of other substantial evidence connecting Jackson to the crime, we hold that Jackson failed to demonstrate prejudice. Accordingly, the circuit court properly denied this claim. *See Deparvine v. State*, 146 So. 3d 1071, 1102-03 (Fla. 2014) (resolving *Strickland* issue on lack-of-prejudice grounds without analyzing performance prong).

**7. Cumulative Prejudice**

Finally, Jackson argues that the circuit court erred in denying his claim that the numerous alleged deficiencies of counsel warranted a new guilt phase. Where multiple instances of deficient performance are proven or assumed, we "consider the impact of the[] errors cumulatively to determine whether [the defendant] has established prejudice." *Brown v. State*, 304 So. 3d 243, 258 (Fla. 2020) (second alteration in original) (quoting *Sparre v. State*, 289 So. 3d 839, 847 (Fla. 2019)). We rejected Jackson's arguments of deficient performance as to all but two claims. For those two claims, we assumed deficient performance but ultimately found no prejudice. Even considering the combined effect of the assumed

- 31 -

deficient performance, we find that Jackson cannot establish

prejudice. Accordingly, the circuit court properly denied this claim.

### B.    Habeas Petition

In his habeas petition, Jackson contends that appellate

counsel rendered deficient performance on direct appeal in failing to

argue all of the instances of improper (but unobjected-to)

prosecutorial comments.[11]  Jackson is not entitled to habeas relief.

"In general, claims of ineffective assistance of appellate

counsel are properly presented in a petition for writ of habeas

corpus[.]" *Brown*, 304 So. 3d at 278 (citing *Baker v. State*, 214 So.

3d 530, 536 (Fla. 2017); *Wickham v. State*, 124 So. 3d 841, 863

(Fla. 2013)).  "The standard for a claim of ineffective assistance of

appellate counsel mirrors the *Strickland* standard for ineffective

assistance of trial counsel: the petitioner must demonstrate

deficient performance and resulting prejudice." *Hilton v. State*, 326

So. 3d 640, 652 (Fla. 2021) (citing *Frances v. State*, 143 So. 3d 340,

358 (Fla. 2014)).  Therefore, the petitioner must

---

11. As noted above, on direct appeal, appellate counsel challenged several prosecutorial comments.  *See Jackson*, 180 So. 3d at 958.  We held that, to the extent the comments were improper, they did not rise to the level of fundamental error.  *Id.*

- 32 -

establish [first, that] the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

*Brown,* 304 So. 3d at 278 (alteration in original).

As relevant here, appellate counsel can be deficient for not raising meritorious claims of fundamental error, and improper prosecutorial comments can, in some limited circumstances, rise to the level of fundamental error. *Sheppard,* 47 Fla. L. Weekly at S74. To establish fundamental error, Jackson relies on two unobjected-to comments. However, because those two comments do not rise to the level of fundamental error on their own or in combination with the comments challenged on direct appeal, Jackson has failed to demonstrate deficient performance.

During the initial closing argument, the prosecutor stated:

> Now, he can't come in here and lie to you today about knowing her because he has to be able to explain his DNA and his fingerprints.
>
> His DNA, *his fingerprints on her body, in her blood* is as good as a signed confession.

(Emphasis added.)

As Jackson notes, his fingerprint was not found on Pearce's body; rather, it was found on the kitchen sink. Even accepting Jackson's interpretation that the statement did not entirely conform to the facts, we find that appellate counsel was not deficient for failing to urge reversal based on it. The statement was brief and the only occasion where the prosecutor conflated the fingerprint and DNA evidence. Accordingly, this comment appears to be an inadvertent "slip of the tongue," not an instance of prosecutorial misconduct. *See Burr v. Pollard*, 546 F.3d 828, 832 (7th Cir. 2008).

Jackson is not entitled to habeas relief as to the second unbriefed comment either. In rebuttal closing argument, the prosecutor led off with the following remark:

> Defense counsel said in jury selection that there are two sides to every story. And that's true. There are two sides to every story. But there can be only one truth. . . . And while there are two halves to a basketball game, a blow-out is still a blow-out when the final score is determined. And this case, with its evidence being overwhelming, is a blowout. It is. The evidence of this man's guilt is overwhelming.

We find this statement not impermissible. Fairly interpreted, the prosecutor was merely giving his view of the strength of the State's case. *See Dessaure v. State*, 55 So. 3d 478, 487 (Fla. 2010);

*Dailey v. State*, 965 So. 2d 38, 44 (Fla. 2007); *Fountain v. State*, 275 So. 3d 253, 255 (Fla. 1st DCA 2019); *Easterly v. State*, 22 So. 3d 807, 817 (Fla. 1st DCA 2009).

There is another reason why this comment was not improper. We have stated that "[a] prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject." *Scott v. State*, 66 So. 3d 923, 930 (Fla. 2011) (alteration in original) (quoting *Walls v. State*, 926 So. 2d 1156, 1166 (Fla. 2006)). Here, defense counsel characterized the State's case against Jackson as weak—asserting that the State produced absolutely no evidence of his guilt. Accordingly, the prosecutor's statement of a contrary view was a fair reply to the defense's closing argument.

Nevertheless, even if both challenged comments were improper, they would not—on their own or in combination with the remarks found (or assumed) improper on direct appeal—rise to the level of fundamental error. *See Alcegaire v. State*, 326 So. 3d 656, 665 (Fla. 2021) (noting that unobjected-to comments rise to the level of fundamental error only when those comments "reach[] down into the validity of the trial itself to the extent that a verdict of guilty

could not have been obtained without the[m]").  Both comments were quite brief, not inflammatory, and not statements on the law the jury would apply during deliberations.  And, though the fingerprint remark was factually inaccurate, we do not think that this stray comment confused the jury given the state of the evidence at trial.  Thus, had appellate counsel pressed the arguments advanced now, we would still have affirmed on the closing-argument issue on direct appeal.

Accordingly, Jackson has failed to demonstrate ineffective assistance of appellate counsel and is not entitled to a writ of habeas corpus.  *See Brown*, 304 So. 3d at 280 (denying habeas relief "because appellate counsel was not ineffective for failing to challenge on direct appeal unpreserved issues that do not amount to fundamental error").

### III.  CONCLUSION

For the reasons given above, we affirm the circuit court's order and deny Jackson's habeas petition.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ. concur.
LABARGA, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    James Hunt Daniel, Judge
    Case No. 162008CF010726AXXXMA
And an Original Proceeding – Habeas Corpus

Robert S. Friedman, Capital Collateral Regional Counsel, Thomas Voracek and Karin L. Moore, Assistant Capital Collateral Regional Counsel, North Region, Tallahassee, Florida, and Stacy R. Biggart, Special Assistant Capital Collateral Regional Counsel, Gainesville, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent